379 P.2d 972

**Robert L. GEAR, also known as Robert Lee Gear, a divorced man, Appellant,**

**v.**

**CITY OF PHOENIX, a municipal corporation, Appellee.**

**No. 7085.**

Supreme Court of Arizona.

In Division.

March 27, 1963.

Bayham & Huffsteter, Phoenix, for appellant.

Merle L. Hanson, present City Atty., John R. Franks, former City Atty., Leven B. Ferrin, Patrick E. Burke and Ben C. Pearson, Asst. City Attys., Roush & Kamps, Phoenix, of counsel, for appellee.

JENNINGS, Justice.

In 1958 the City of Phoenix (appellee), pursuant to a city ordinance authorizing and directing the widening of north Seventh Street, instituted proceedings to condemn the west seven feet of a lot owned by Robert L. Gear (appellant). Pursuant to stipulation the appellee posted an $8,000 bond and took immediate possession. The matter was subsequently tried before a jury and appellant received a verdict of $2,200 upon which judgment was entered. Appellant's motion for judgment n. o. v. for $8,000 or for new trial was denied and he appealed.

Appellant complains of two ordinances [1] of the City of Phoenix which were included in the instructions given by the court. One ordinance requires that a six inch high curb or bumper guard be constructed around lots used for parking more than three automobiles so that no part of the vehicles will extend over any property line. The other ordinance provides that curb cuts and sidewalk driveway crossings for access to private property should not be placed where they would unreasonably interfere with traffic in adjacent streets. It further provides that no driveways in a commercial area shall be permitted unless there is sufficient space on private property to provide egress without backing the vehicle across the sidewalk.

Appellant's lot, which is on the east side of Seventh Street, contains a building housing appellant's residence and chiropractic office. This building was situated thirty-three feet east of the lot's west boundary line as it was located before the condemnation. Appellant's patients customarily parked five or six cars in this area west of the building prior to the widening of the street. However, if the cars were parked in accordance with the foregoing ordinances there was sufficient space to park only four cars. After the taking of the seven-foot strip there was sufficient space to park only two cars lawfully.

Appellant contends that the eminent domain proceedings were the sole cause of the loss of four parking spaces for which he is entitled to severance damages. Appel-

[1] Phoenix, Ariz., Ordinance G-104 § 601(B) 13, March 1, 1955 and Phoenix, Ariz., Ordinance G-94 § 47, July 27, 1954.

lee contends that the taking of the seven-foot strip caused the loss of only two parking spaces for which appellant was compensated. If the ordinances are a reasonable exercise of the city's police power as applied to this case, the appellee's contention is correct because the availability of land for a use which is prohibited by law cannot be considered in determining its value in eminent domain proceedings. Department of Public Works and Buildings v. Hubbard, 363 Ill. 99, 1 N.E.2d 383 (1936); Joly v. City of Salem, 276 Mass. 297, 177 N.E. 121 (1931); 4 Nichols, Eminent Domain § 12.-3143 (4th ed. 1962); 1 Orgel, Eminent Domain § 33 (2d ed. 1953).

The exercise of the police power is valid where the subject to which the regulation relates is within the scope of legislative power, the ends sought to be attained are appropriate and the regulations prescribed are reasonable and have a rational basis. A regulation is reasonable if fairly appropriate to its purpose and not destructive of inherent rights. Myerson v. Sakrison, 73 Ariz. 308, 240 P.2d 1198 (1952). A municipality clearly has the power to regulate the use of its streets, including ingress thereto and egress therefrom. Hughes v. City of Phoenix, 64 Ariz. 331, 170 P.2d 297 (1946); Wood v. Phoenix-Tempe Stone Co., 35 Ariz. 155, 275 P. 5 (1929). The regulation in this case sought to avoid the danger of collision with vehicles or pedestrians created by automobiles backing into traffic from off-street parking places. The elimination of this danger is a legitimate consequence of the city's right and duty to regulate traffic for the benefit of the public's safety and general welfare. Hillerege v. City of Scottsbluff, 164 Neb. 560, 83 N.W.2d 76 (1957). A requirement that motorists wishing to enter the public street back and turn in some place other than a heavily traveled lane of traffic appears to be reasonably calculated to eliminate the hazard. Also, the city has the power to require construction of a curb so as to eliminate any hazard to pedestrians which would otherwise be created by automobile bumpers extending over part of the sidewalk. Therefore, the ordinances, as such, are a valid exercise of the police power.

Appellant contends, however, that as applied to his property the ordinances are unconstitutional. He maintains that they restrict the use of his property to the extent that it cannot be used for any reasonable purpose, and that they curtail the manner in which he had used the property prior to their adoption. In support of this contention appellant points to the reduction of parking spaces from six to four and cites two cases which he deems analogous. In Roer Construction Corp. v. City of New Rochelle, 207 Misc. 46, 136 N.Y.S.2d 414 (1954), a city ordinance left the owner unable to build on his property or to do any-

thing constructive with it. In O'Connor v. City of Moscow, 69 Idaho 37, 202 P.2d 401 (1949), a zoning ordinance prohibited the continuation of an existing lawful business. In both of these cases there was such serious interruption of the common and necessary use of the property and interference with the rights of the owner as to constitute a "taking." Patently, the ordinances in the instant case do not constitute a serious interference with the owner's rights. They certainly do not prevent the use of appellant's property for any reasonable purpose, and, without more, the elimination of two parking spaces cannot be said to be an unreasonable or arbitrary exercise of power in view of the public interest involved. Nor are the ordinances destructive of any inherent right. The appellant does not have an inherent or vested right in the continuation of a particular manner of parking automobiles on his property.

Therefore, we conclude that as applied to this case the ordinances are a reasonable exercise of the city's police power and the jury was properly instructed with respect thereto.

Appellant assigns as error the trial court's refusal to allow the appellant to testify on redirect examination as to his reasons for failing to comply with the ordinances. Under the circumstances of this case the reasons for the appellant's failure to comply with the ordinances are immaterial. The fact that appellant had theretofore parked automobiles upon his property unlawfully, whether in good or bad faith, could not affect his right to continue to do so.

The appellant's last assignment of error concerns the $8,000 bond posted by the appellee pursuant to stipulation.[2] Appellant contends that when a condemnee's demand for a jury trial on the issue of compensation prior to the condemnor's taking immediate possession is denied, the condemnee is entitled to the full amount deposited in court pursuant to stipulation. Appellant argues that inasmuch as Arizona Constitution Art. 2, § 17 is self-executing, A.R.S. § 12–1116, which outlines the procedure for obtaining immediate possession in eminent domain proceedings, is not controlling when not intended to be followed by the parties.[3]

2. On June 2, 1959 the parties stipulated as follows:
    "It is further stipulated by and between counsel for the plaintiff and counsel for defendant as to Parcel No. 30 that the plaintiff will post with the Clerk of the Court a bond in the amount of $8,000.00 for the right of immediate possession, and it is ordered in conformity with said stipulation."

3. A.R.S. § 12–1116 provides in part as follows:
    "A. All actions for condemnation shall be brought as other civil actions in the superior court of the county in which the property is located. The plaintiff may, at the time of filing the complaint, or at any time thereafter, make application to the court for an order permitting him to take posses-

Appellant points out that his attorney scrupulously avoided any reference to this statute in the stipulation which, he maintains, was intended to provide for a cash payment in lieu of a constitutionally demanded trial on the issue of compensation.

Without deciding the validity of appellant's novel suggestion we hold that the parties, at the time they entered into the stipulation, contemplated the statutory procedure provided for in such cases and intended that the bond constitute security for the appellant's rights pending a jury trial and determination of the amount of his compensation.

In the construction of stipulations the primary rule is to ascertain and give effect to the intention of the parties, but the secret purpose or motives of one party is not controlling. A stipulation must be construed in the light of the circumstances surrounding the parties and in view of the result which they were attempting to accomplish. However, the language used will not be construed to give it the effect of an admission of fact obviously intended to be controverted. In re Brandt's Estate, 67 Ariz. 42, 190 P.2d 497 (1948).

Appellee expressly instituted the proceedings for immediate possession under A.R.S. § 12–1116 and the order granting immediate possession was entered "in pursuance of the laws of the State of Arizona in such cases made and provided.". It is also apparent that the amount of compensation was obviously intended to be controverted by the appellee and was the sole bone of contention between the parties. Under these circumstances the appellee had ample reason to suppose that the appellant understood that the "bond" stipulated for was the one referred to in A.R.S. § 12–1116(F) and that it was to stand as security for payment of the compensation which subsequently would be determined, and that it was not an undertaking for the amount of compensation actually due to the appellant.

sion of, and use the property sought to be condemned for the purpose prayed for.

*    *    *    *    *

"C. On the day of the hearing, if it appears that the use for which the property is sought to be condemned is a necessary use, the court shall receive evidence as to the probable damages to each owner, possessor or person having an interest in each parcel of land sought to be condemned, and may direct that upon a deposit of money in double the amount of the probable damages so found to each person in interest, the plaintiff shall be let into the possession and full use of the parcels of land, as described in the order, for the purposes therein specified.

*    *    *    *    *

"F. The parties may stipulate as to the amount of deposit, or for a bond from the plaintiff in lieu of a deposit. The stipulation or evidence of such deposit shall not be introduced in evidence or used to the prejudice of any party in interest on the trial of the action."

For the foregoing reasons the judgment and order denying appellant's motion for judgment n. o. v. or for new trial are affirmed.

BERNSTEIN, C. J., and STRUCKMEYER, J., concurring.