515 P.2d 57

**William C. FIELDS, dba Gasoline Alley, Appellant,**

v.

**James B. STEYAERT, Appellee.**

**No. 1 CA–CIV 1979.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 25, 1973.

Rehearing Denied Dec. 13, 1973.

Review Granted Jan. 15, 1974.

Walter F. Kessler, Phoenix, for appellant.

Lewis & Roca, by John P. Frank, D. W. Grainger, Mary M. Schroeder, Phoenix, for appellee.

## OPINION

OGG, Judge.

This matter comes before us as a test case to determine the lien rights of a towing operator who is called by a deputy sheriff to an accident scene to remove a disabled automobile after the injured owner has been taken unconscious to a hospital.

On January 2, 1969 a deputy sheriff, in the process of investigating a traffic acci-

dent, called the defendant Fields—who operated a towing service—to remove the disabled automobile belonging to plaintiff Steyaert. Fields towed Steyaert's automobile to his garage premises where it was stored. Approximately a month later the plaintiff's wife and a representative of plaintiff's insurance carrier, State Farm Mutual Insurance Company, demanded the return of the automobile which was refused by Fields when the parties could not agree on the amount of storage charges. On February 13, 1969 Steyaert sued in replevin to recover possession of his automobile or, in the alternative, for damages. Fields counterclaimed for his towing and storage charges. During the ensuing months and before the trial Fields sold the automobile as an abandoned vehicle pursuant to A.R.S. § 28–1405, subd. B. At the trial the court awarded Steyaert the sum of $150.00 and dismissed Fields' counterclaim. Fields now brings the appeal from that judgment.

■ Under the facts of this case: Does a garageman have a lien for storage charges that can be enforced by a sale when the automobile is in his possession at the direction of a police officer without the knowledge or consent of the owner? We believe not. The legislature has enacted specific legislation that covers this question in A.R.S. § 33–1022, subd. B:

> "Proprietors of garages, repair and serv-ice stations shall have a lien upon motor vehicles of every kind, and the parts and accessories placed thereon, for labor, materials, supplies and storage for the amount of the charges, *when the amount of the charges is agreed to by the proprietor and the owner*." [Emphasis added]

No one contends that there was ever an agreement between Fields and Steyaert or any of their representatives as to what the proper amount of charges were to be and therefore Fields' contention that he had a valid lien under this statute must fall.

■ Fields' position in this case is made further untenable by his treatment of the automobile as "abandoned" and his subsequent sale under the Arizona statute relative to abandoned vehicles. A.R.S. § 28–1401 et seq. Obviously this was not an abandoned automobile; once Steyaert was informed of the location of his automobile he made a demand for possession.

Appellant Fields makes a strong policy argument that a garageman will never again answer an officer's call to clear the wreckage from our public highways unless he is granted a lien.

Appellee Steyaert makes an equally compelling argument that a motorist rendered unconscious in an accident should not awaken to find his automobile has been towed away, stored and eventually sold unless he pays an exorbitant bill that was not of his own making. These impassioned policy arguments make good reading but are considerations for the legislature and not for the courts.

The statute covering this situation is unambiguous. We must presume that the legislature, with sound reasoning, meant what it said and that no garageman shall have a lien in such a case unless the amount of the charges is agreed to by the owner of the automobile.

We believe the legislative intent to be that the owner or his agent must have placed the automobile with the garageman and made some express or implied contract relative to the charges to be incurred before the garageman can have a *lien* on the automobile.

We have two principal Arizona cases bearing upon the issue in this case. In Fishback v. Foster, 23 Ariz. 206, 202 P. 806 (1922), the Arizona Supreme Court reversed a trial court decision that permitted a garageman to sell a car to collect an unpaid storage bill on a car that had been placed in storage by the owner. The court held that, although the garageman had no statutory lien under the existing laws, he did have a common-law warehouseman's lien; he could retain possession of the automobile as security for the debt but this did not include the right to sell the auto-

mobile to satisfy the lien. The common-law lien granted in that case has now been covered by the provisions of A.R.S. § 33-1022, subd. B.

In Bayham v. Fields, 10 Ariz.App. 7, 455 P.2d 294 (1969), the Arizona Court of Appeals, in a case interpreting A.R.S. § 33-1022, subd. B, upheld a decision of the trial court awarding storage charges to a garageman for storing a trailer pursuant to a sheriff's attachment. The appellate court in that case stated by implication it would have reversed the trial court on the ground that the owner of the trailer never consented to the amount of the storage charges; however, since this issue was never raised in the trial court and there was an inadequate record, it affirmed the order of the trial court.

■ In the instant case, Fields also contends that the trial court erred in not granting a judgment in his favor at the end of plaintiff Steyaert's case. The record does not support this contention. Steyaert established that Fields was in possession of the automobile and that Fields had refused to surrender possession upon demand. Whether Fields was justified in so refusing was avoidance matter which he had the burden of proving in the form of an affirmative defense. Arizona Rules of Civil Procedure 8(d), 16 A.R.S.; Lakin Cattle Co. v. Engelthaler, 101 Ariz. 282, 419 P.2d 66 (1966).

■ The record discloses that there was no dispute at the time of trial relative to the fact that Fields was entitled to a reasonable sum for his tow bill and storage charges incurred prior to the date of demand for the return of the automobile. The accrued tow and storage charges at that time amounted to a total sum of $97.-16.

We hereby modify the judgment in this case to award the appellant Fields the sum of $97.16 on his counterclaim against Steyaert.

The judgment of the trial court is affirmed as modified.

DONOFRIO, P. J., concurs.

STEVENS, Judge (dissenting in part and concurring in part).

I regret that I am unable to join in the majority opinion. I would reverse, denying recovery to the plaintiff and granting a new trial for a determination of the amount of the appellant's recovery. I recognize that the majority opinion has the greater weight of authority in its support. Since this case establishes law in Arizona in an area previously not clearly covered by statute or by court decision, I favor placing Arizona in the minority column.

I agree with the majority that the trial court did not err in denying the motion Fields presented at the time the plaintiff rested.

Should it be that the majority opinion stands, then I concur in the modification of the trial court's judgment.

In this dissent some additional facts will be recited, facts of which the majority was fully aware and which were not essential to its opinion.

On the day of the accident the plaintiff's wife was informed by the deputy sheriff as to the location of the car. The Highway Commission was notified concerning the location of the automobile within 72 hours of the time that Fields took the car into his protective custody as provided by A.R.S. § 28-1401.02, and within 15 days as provided by A.R.S. § 28-1402. After the 15-day notice, of which the plaintiff had knowledge, the plaintiff's wife and later his insurer's representative visited defendant's place of business for the purpose of securing possession of the plaintiff's automobile. When advised of the charges the insurance carrier refused to pay. There is no evidence before the Court as to the amount, if any, that the insurance carrier was willing to pay to secure the release of the car. So far as the record discloses, without tendering any payment whatsoever, the carrier demanded immediate possession of plaintiff's automobile. Defendant refused. Shortly thereafter, on 13 Febru-

ary, 1969, plaintiff sued in replevin to recover possession of his automobile, or in the alternative in conversion for its value plus the value of its loss of use. No replevin bond was posted. Defendant counterclaimed for the amount of the unsatisfied fees. During the ensuing months and before the trial of the action, the Arizona Highway Department issued a bill of sale to the automobile to the defendant and he sold it pursuant to A.R.S. § 28–1405. There is no explanation as to why there was so long a delay by the Highway Department before it issued its bill of sale to the defendant, thus enabling him to sell the car in an effort to recoup part of his loss.

Defendant argues that he is entitled to the reasonable value of his services in towing and storing the plaintiff's vehicle. Plaintiff contends that the defendant must first establish his right to be paid as a matter of law. It is further contended that the owner did not intend to abandon his automobile, and the sheriff's deputy had no reasonable grounds to believe that he had so intended. A.R.S. § 28–1401.-01(B).

The authority for a law enforcement officer to take control of an automobile when the person in charge is unable to provide for its removal is found in A.R.S. § 28–872(C)(2):

"C. Any police officer is authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway:

\* \* \* \* \* \*

2. When the person or persons in charge of such vehicle are unable to provide for its custody or removal." As amended, Laws 1967, Ch. 32, § 1.

The rationale behind this type of statute is that law enforcement officers have a duty to keep the streets clear of public nuisances. Hughes v. City of Phoenix, 64 Ariz. 331, 170 P.2d 297 (1946); Moton v. City of Phoenix, 100 Ariz. 23, 410 P.2d 93 (1966); see. also Gear v. City of Phoenix, 93 Ariz. 260, 379 P.2d 972 (1963). Thus, the authority of the deputy sheriff to have the automobile removed was not based on the consent of the owner, but the obligation of the deputy to keep the streets free of public nuisances. I believe that where the abatement of a nuisance is authorized by statute or regulation, the person creating that nuisance may be assessed for the cost of its abatement. Eccles v. Ditto, 23 N.M. 235, 167 P. 726 (1917); Oberst v. Mays, 148 Colo. 285, 365 P.2d 902 (1961); 66 C.J.S. Nuisances § 108, p. 860 n. 20. Regulations made by the Highway Commission pursuant to A.R.S. § 28–1007 provide that the owner shall be liable for the towing expenses:

"When the driver, owner, or someone acting in the owner's behalf is absent, a police officer may summon a truck for the removal of the vehicle. It is not the police officer's responsibility to contract for the vehicle removal, but when he is interested in clearing traffic lanes, he is acting in the public interest and acting for the legally responsible owner, if the owner or driver is absent, by having the truck, the vehicle towed to a safe place. *All tow expenses are at the owner's responsibility.*" [Emphasis supplied]

Defendant challenges plaintiff's contention that, although plaintiff may be liable for towing expenses, the deputy sheriff could not validly authorize the expense of the storage of the automobile. I believe that under A.R.S. § 28–872(C)(2) the deputy, in absence of instructions from the owner, could authorize its placement in no place other than a garage or other place of safety. The facts in the record convince me that once the tow truck operator takes the disabled automobile in tow, he is lawfully in possession of the property of another person. Thus he becomes a bailee, albeit a constructive bailee, of that person's property. Brown, Personal Property Ch. XII § 91, p. 399. See Restatement of Torts (2d) § 265. Once lawfully assuming

possession, he accepted the duties of bailee and would be liable for any breaches of those duties. Ryan v. Chown, 160 Mich. 204, 125 N.W. 46 (1910). Brown, supra, at pp. 402, 403. A person legally assuming custody over another's property for its preservation is entitled to compensation. Restatement of Restitution § 17 states:

"117. Preservation of Another's Things or Credit

(1) A person who, although acting without the other's knowledge or consent, has preserved things belonging to another from damage or destruction, is entitled to restitution for services rendered or expenditures incurred therein, if

(a) he was in lawful possession or custody of the things or if he lawfully took possession thereof, and the services or expenses were not made necessary by his breach of duty to the other, and

(b) it was reasonably necessary that the services should be rendered or the expenditures incurred before it was possible to communicate with the owner by reasonable means, and

(c) he had no reason to believe that the owner did not desire him so to act, and

(d) he intended to charge for such services or to retain the things as his own if the identity of the owner were not discovered or if the owner should disclaim, and

(e) the things have been accepted by the owner * * *."

The defendant is in the business of towing and as an incident thereto storing automobiles, and I believe that the services extended in this regard are impliedly for compensation. See Brown, § 108, pp. 520, 521; 8 Am.Jur.2d, Bailments, § 226, p. 1117.

The next question for consideration is whether the defendant had a lien on the automobile to enforce the payment of the reasonable charges due to him. Counsel engaged in extended discussion of the garagemen's lien provided in A.R.S. § 33–1022(B).

Section 3672 of the 1913 Civil Code, the predecessor to A.R.S. § 33–1022, was considered in Fishback v. Foster, a case cited by the majority. I agree with the majority's observations as to that case. The Legislature amended the statute following the Fishback decision. I agree that the amendment did not fill the needs of Fields in the case at bar.

I conclude that the facts in this case do not come within the garagemens lien provided in A.R.S. § 33–1022(B). The defendant's error in his choice of remedy should not defeat the justness of his claim. I believe that the statute does not prevent us from applying the principles of common law as expressed by the Restatement and Arizona law, nor does it prevent the application of the rules of common law to reach a result consistent with sound public policy.

In taking custody of the automobile the tow truck operator is serving the public interest in keeping the streets clear of nuisances and traffic hazards. While taking possession of the car pursuant to statutory authorization and performing a valuable public service [1] the operator assumes his obligation to the owner to safeguard his property. To leave the car unattended and not protected on or near public roadways would invite theft and vandalism. I believe that a valuable service is being rendered to its owner by its removal and safekeeping. Since the operator conducts this activity as a business, I believe he is entitled to compensation for the reasonable value of his services. Since the common law, and Arizona case law, grant a lien to

---

1. If the incident had taken place in the City of Phoenix, the City would have provided the towing and storage, and the City would have retained a lien for the towing and storage fees. Code of the City of Phoenix, Chapter 36, Art. II, § 36–6 through § 36–8

one holding another's property in a custodial relationship, I believe the storage lot operator is entitled to a lien on the property he safeguards.

Against this background, I disagree with the plaintiff's contentions that defendant wrongfully disposed of his automobile under the abandoned automobile provisions of A.R.S. § 28–1401 et seq. The evidence does not show that " * * * [a] claim has been made for the return or possession [of the automobile] by any person legally entitled thereto * * *." as provided by A.R.S. § 28–1402. In order to be so entitled, the owner and his insurer were required to offer the reasonable value of the operator's services to satisfy the lien he held on the automobile. Receiving no lawful demand for possession, the operator was entitled to process the automobile as abandoned.

For these reasons, I respectfully dissent.