930 P.2d 473

**ADAGE TOWING & RECOVERY, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**CITY OF TUCSON, an Arizona governmental agency,**

and

**State of Arizona, Grant Woods, Attorney General, Defendants/Appellees.**

No. 2 CA–CV 95–0242.

Court of Appeals of Arizona, Division 2, Department A.

June 20, 1996.

Review Denied Jan. 14, 1997.

Hirsh, Davis & Piccarreta, P.C. by Robert J. Hirsh and David L. Bjorgaard, Tucson, for Plaintiff/Appellant.

Thomas J. Berning, City Attorney by Ronald M. Detrick, Tucson, for Defendant/Appellee City of Tucson.

Grant Woods, Attorney General by Sylvia E. Goodwin, Tucson, for Defendant/Appellee State of Arizona.

## OPINION

PELANDER, Presiding Judge.

Plaintiff/appellant Adage Towing & Recovery, Inc. (Adage) operates a vehicle towing, salvage and storage business. Under contracts with certain private property owners, on the property owner's request Adage is obligated to tow vehicles improperly parked on the private property in violation of posted rules and regulations. Adage has supplied its private property owner/clients with signs which state:

> Vehicles parked in violation of
> property rules and regulations will
> be towed and stored at owners [*sic*]
> expense, creating a lien on vehicle
> for the charges of $65 impound,
> $2.50 per mile, $7 per day storage.
> Parking is a consent to
> a lien on my vehicle.
> Adage Towing & Recovery, Inc. 888–1220
> 3343 W. Sunset RD. A.R.S. 9–499.05

Adage filed this action for declaratory relief under A.R.S. § 12–1831 *et seq.*, naming the state and the City of Tucson as defendants.[1] Adage sought *inter alia* a ruling from the trial court that the above-quoted sign, when combined with other clearly visible signs posted on private property and indicating the parking rules and regulations for the property, is sufficient to create a binding implied contract, including a consensual lien, between Adage and a vehicle owner who parks in violation of the posted rules and regulations.[2] Framing the issue as "whether

---

1. This action was prompted by Adage's contested towing and retention of a vehicle, and by an ongoing conflict between Adage and city and state law enforcement agencies over Adage's asserted liens on towed vehicles and its refusal to release such vehicles until all claimed charges have been paid. Although the underlying facts were not fully developed or formally established in the trial court through affidavits, depositions or any evidentiary hearing, the parties agree, and the record indicates, that this case involves a justiciable issue and a genuine controversy between them. Thus, we are not being asked to render a mere advisory opinion on a moot, theoretical or abstract question. *See Arizona State Bd. of Directors for Junior Colleges v. Phoenix Union High School Dist.,* 102 Ariz. 69, 73, 424 P.2d 819, 823 (1967).

2. Adage also sought a ruling that the combination of signs complied with A.R.S. § 9–499.05, whereas defendants requested a ruling that the signs, their manner of posting, and Adage violated the statute. The trial court declined to decide that issue, concluding that it should be litigated in Tucson City Court, and no party has appealed from that ruling.

**398**

an owner's motor vehicle can be subject to a lien in favor of a towing company where the vehicle is parked in violation of privately posted parking regulations and is removed from the private property pursuant to a towing requested by the property owner," the trial court ruled as follows:

1) A.R.S. 9–499.05 does not permit a statutory basis for the creation of a lien upon towed and/or stored motor vehicles removed from private property pursuant to this statute.

2) Arizona common law does not permit the creation of a lien upon towed and/or stored motor vehicles removed from private property pursuant to A.R.S. 9–499.05.

3) In the absence of an ordinance pursuant to A.R.S. 9–499.05(A), an owner of private property may set forth the financial consequences of parking without permission on the owner's property.

4) A sign that complies with A.R.S. 9–499.05 [3] creates a legally binding contract between the towing company and the parking violator which would permit a towing company to seek relief for its contractual damages.

The court later clarified its decision by rejecting Adage's contention that a *"binding implied contract* can be created with a sign including any provisions. .... which includes the provision of an implied lien," ruling instead that "[t]he posting of a sign stating a lien shall be created does not create a lien, express or implied, for towing or storage charges on the towed automobile." This appeal followed.

■■■ Adage contends that, as a matter of law, the above-quoted sign (assuming proper posting, visibility and readability) can create a binding contract, including an implied, consensual possessory lien, between Adage and parking violators whose vehicles are impounded and stored by Adage at the request

of property owners. Because the question is strictly one of law, our review is *de novo*. We will affirm the trial court's decision if it is correct for any reason. *Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.,* 140 Ariz. 174, 178, 680 P.2d 1235, 1239 (App. 1984).

In *Capson v. Superior Court,* 139 Ariz. 113, 677 P.2d 276 (1984), our supreme court addressed the issue of whether a towing company had a lien on a vehicle for towing and storage charges when the vehicle was towed away for having been parked on posted private property without permission. In that case, "[s]igns prohibiting parking in the area indicated that violators' automobiles would be towed away and a $75 towing fee incurred." *Id.* at 114, 677 P.2d at 277. In concluding that the towing company had no valid lien, the court noted that "[a] common law lien arose only when some value was imparted to the automobile by 'performing work or furnishing material' for the vehicle." *Id.* at 115, 677 P.2d at 278, *quoting Candler v. Ash,* 53 Ohio App.2d 134, 136, 372 N.E.2d 617, 619 (1976). The court then held that "[a]ny lien for towing or storage of an automobile in Arizona must have a statutory basis." 139 Ariz. at 115, 677 P.2d at 278. *See also Currie v. Dooley,* 132 Ariz. 584, 586–87, 647 P.2d 1182, 1184–85 (App.1982); *Fitzhugh v. City of Douglas,* 122 Ariz. 599, 600, 596 P.2d 737, 738 (App.1979) ("The existence of [a lien for storage] is strictly statutory and, being in derogation of the common law, such a right is entirely conditional on the statutory wording.").

Adage acknowledges that there is no specific statutory or common law basis for the lien it seeks to impose. It contends, however, that under general contract principles its sign creates an enforceable lien for unpaid charges against an improperly parked vehicle which it tows and stores. Adage's reliance

---

**3.** A.R.S. § 9–499.05(B), as amended in 1991, provides that a private property owner "shall be deemed to have given consent to unrestricted parking by the general public" in the property's parking area unless such area is posted with signs "which are clearly visible and readable from any point within the parking area and at each entrance" and which contain at least the following information:

1. Restrictions on parking.
2. Disposition of vehicles found in violation of the parking restrictions.
3. Maximum cost to the violator, including storage fees and any other charges that could result from the disposition of a vehicle parked in violation of parking restrictions.
4. Telephone number and address where the violator can locate his vehicle.

on *Capson* for that proposition, however, is misplaced. Although the court in *Capson* stated that "[t]here must be an express or implied agreement between the owner of the vehicle and the person doing the services" for a possessory, consensual lien to attach, 139 Ariz. at 116, 677 P.2d at 279, nothing in the decision supports Adage's contention that its sign, as a matter of law, can create such a lien. Indeed, the supreme court not only found no common law possessory lien in *Capson*, it also noted that "even if there were an implied agreement to pay $75 for towing, there is no statutory basis for a lien to secure the payment of that amount." *Id.* at 115, 677 P.2d at 278.

The court in *Capson* also stated that " '[a] mere possessor has no authority to create a lien against an automobile without the owner's consent.' " *Id.* at 116, 677 P.2d at 279, *quoting Kunde v. Biddle,* 41 Ill.App.3d 223, 226, 353 N.E.2d 410, 413 (1976). Neither Adage's sign nor a person's improperly parking on private property in violation of posted signs establishes, as a matter of law, the owner's consent to a lien. Such consent cannot be "reasonably implied" under these circumstances, *Associates Fin. Serv. Co., Inc. v. O'Dell,* 491 Pa. 1, 5, 417 A.2d 604, 606 (1980), particularly where there are no "reasonable grounds to believe that the owner would have consented had he been asked" and where "it is obvious that the owner would not have consented." *Apartment Owners and Managers Comm. v. Brown,* 252 Pa.Super. 539, 547, 382 A.2d 473, 477–78 (1977), *aff'd in part and rev'd in part on other grounds,* 487 Pa. 548, 410 A.2d 747 (1980).

If any lien based on signage should be created or recognized in this context, we believe that determination is best left to the legislature.[4] As a Connecticut court has stated:

> The court should not depart from the established common law of this state and of other jurisdictions so as to authorize or to create a lien in favor of the [towing company] and adverse to the [vehicle owner]. Such action would involve the balancing of conflicting economic interests and property rights.... A change in the law in this area, if it is to be effected, is the task of the legislature, not the courts. In the regulation of business transactions, "the legislature ... has broad discretion in passing on the interest to be protected and the method to be employed."

*Halloran v. Spillane's Servicenter, Inc.,* 41 Conn.Supp. 484, 495, 587 A.2d 176, 182 (1990). *See also Younger v. Plunkett,* 395 F.Supp. 702, 714–15 (E.D.Pa.1975); *Kunde,* 41 Ill.App.3d at 228, 353 N.E.2d at 415.

■ Through a cross-issue raised in its answering brief, the city attempts to challenge and overturn the trial court's ruling that "[a] sign that complies with A.R.S. 9–499.05 creates a legally binding contract between the towing company and the parking violator which would permit a towing company to seek relief for its contractual damages."[5] Because the city essentially seeks to modify the trial court's decision in a manner that would "lessen the rights of the appellant," the city was required to cross-appeal from that aspect of the trial court's ruling and failed to do so. Ariz. R. Civ.App. P. 13(b)(3), 17B A.R.S. Accordingly, we do not address that issue. *See Lewis v. Oliver,* 178 Ariz. 330, 339, 873 P.2d 668, 677 (App.1993), *cert. denied,* 513 U.S. 929, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994).

4. We note that unsuccessful attempts have been made to have legislation enacted to grant towing companies a lien on towed vehicles. *See, e.g.,* S. 1124, 42d Leg., 2d Reg. Sess. (1996); S, 1178, 41st Leg., 1st Reg. Sess. (1995). S. 1124, for example, would have added language to A.R.S. § 33–1022(A) that "[t]owing companies have a lien on motor vehicles for the cost of towing materials, supplies, impoundment and storage of vehicles towed pursuant to a request of a law enforcement agency, the owner or possessor of the vehicle or the owner or agent of the real property from which the vehicle is towed." That bill, however, did not pass the Arizona Senate.

5. Contrary to the city's suggestion, the trial court did not rule that the *owner* of an improperly parked vehicle is contractually bound if he or she was not "the parking violator." In addition, before a legally binding contract is created, the towing company obviously would have to establish that the signs complied with all elements of § 9–499.05(B), including the requirement that the signs be "clearly visible and readable from any point within the parking area and at each entrance."

Affirmed.

LIVERMORE, J., and CHARLES E. ARES, J. Pro Tem., concur.